**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas E. VERKUILEN, Defendant-Appellant.**

**No. 80–2082.**

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1982.

Decided Oct. 6, 1982.

As Modified Oct. 27, 1982.

650

Shelly Waxman & Associates, Robert K. Mayer, Chicago, Ill., for defendant-appellant.

Robert W. Tarun, U.S. Atty., Sheila A. Markin, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The defendant was found guilty in a jury trial of two counts of failing to file individual federal income tax returns. Appellant raises a variety of issues all of which we find to be without merit.

## I.

Verkuilen was employed between 1975 and 1979, earning sufficient income to file tax returns for 1976 and 1977. In 1975, Verkuilen filed an individual (1040) income tax form with the words "Object: Self-incrimination" or "None" typed on most of the lines where income information was requested. There was no other information on the form which indicated his tax liability.

On May 8, 1976, Verkuilen was notified by the IRS that his 1975 tax form was not a proper tax return and that his failure to file an acceptable tax form could result in criminal prosecution pursuant to 26 U.S.C. § 7203.[1] Verkuilen submitted similar 1040 forms to the IRS from 1976 through and including 1979. On the lines of the tax return calling for income information, he simply typed either "Object: Self-incrimination" or "None." Again, there was insufficient information on these forms from which to compute Verkuilen's tax liability.

Verkuilen correctly completed a W–4 income tax withholding form in 1974, validly claiming two allowances. In 1976, however, he filed a W–4(e) exemption form alleging that he was totally exempt from all federal taxes. Later in 1976, he submitted a W–4 withholding form on which he claimed ten allowances. No charges were based on these filings, but they were admitted into evidence.

## II. *Jury Instructions*

Appellant's first contention relates to jury instructions B and C. Verkuilen argues that these instructions shifted the burden of proof in violation of due process, relieving the government of its burden of proving every fact necessary to constitute the offense charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Appellant also contends that the jury instruc-

tions removed the presumption of innocence to which all criminal defendants are entitled.

First, it is necessary to determine whether defense counsel properly objected to the court's instructions. Second, if the objection to the instructions was waived, we must determine whether the jury instructions amounted to plain error.[2]

Defense counsel did not adequately object to the court's instructions B and C. During the conference on jury instructions, pursuant to Fed.R.Crim.P. 30, the following colloquy took place between the court and defense counsel:

THE COURT: [N]ow, I have, which I am going to pass to you, Court's Instruction [sic] B and C.

\* \* \* \* \* \*

[Defense attorney]: Your Honor, I—we strenuously object to this.

\* \* \* \* \* \*

Your Honor, with regard to the Fifth Amendment, I have an alternate instruction.

THE COURT: I don't find any problem with your instruction ... this is his defense. I will give it along with [court's instructions B and C].

[Defense attorney]: Right.

■ Counsel's objection to a jury instruction must state "distinctly the matter to which he objects and the grounds of his objection." Fed.R.Crim.P. 30; *United States v. Jackson,* 569 F.2d 1003, 1009 (7th Cir. 1978); *United States v. Clavey,* 565 F.2d 111, 118 (7th Cir. 1977). Counsel had a duty to make the district court aware of any alleged error in jury instructions so that the court may take appropriate action. *See* Fed.R.Crim.P. 51; *Jackson,* 569 F.2d at 1009. Counsel's objection at the Rule 30 conference hardly put the court on notice

---

1. The statute provides, in relevant part:

   Any person required under this title ... to make a return ... or supply any information, who willfully fails to ... make such return ... or supply such information, at the time or times required by law or regulations, shall ... be guilty of a misdemeanor....

   26 U.S.C. § 7203 (1982).

2. Fed.R.Crim.P. 52(b) provides:

   Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

that defense counsel believed the instructions shifted the burden of proof. Although counsel apparently[3] offered a general objection to court's instructions B and C, a global objection to jury instructions is insufficient to satisfy the mandate of Fed. R.Crim.P. 30 that counsel's objection be specific and distinct. *Jackson,* 569 F.2d at 1009; *Clavey,* 565 F.2d at 118. In addition, counsel apparently acquiesced in the court's instructions when the court agreed to read defendant's instruction to the jury.

In deciding whether instructions B and C constituted plain error under Fed.R.Crim.P. 52(b), we must consider the entire trial record, *Jackson,* 569 F.2d at 1010; *United States v. Johnson,* 515 F.2d 730, 736 (7th Cir. 1975), and discern whether the alleged error in the district court's charge had "a probable impact on the jury's finding that the defendant was guilty." *Jackson,* 569 F.2d at 1010; *Johnson,* 515 F.2d at 736. Moreover, in determining whether there was plain error, we examine whether the instructions removed the presumption of innocence.

First, examining all of the jury instructions together "as a connected series, without undue emphasis given to any of them," *United States v. Hamilton,* 420 F.2d 1096, 1098 (7th Cir. 1970); Federal Criminal Jury Instructions, Committee on Federal Criminal Jury Instructions of the Seventh Circuit, § 1.01 (1980), the court's instructions B and C did not impermissibly shift the burden of proof to the defendant. At the outset of the trial proceedings, the jury was advised that the burden of proof was on the government.[4] Moreover, the record reveals that defense counsel repeatedly stated during his closing argument that the government had the burden of proving the defendant guilty beyond a reasonable doubt. Statements of the law in final argument have been considered in ascertaining whether there has been plain error, *see, e.g., Jackson,* 569 F.2d at 1010; *United States v. Napue,* 401 F.2d 107, 110 (7th Cir. 1968), *cert. denied,* 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568 (1969), although such statements do not supplant jury instructions. *Jackson,* 569 F.2d at 1010.

Second, the court's instructions properly stated the law regarding the assertion of the Fifth Amendment privilege against self-incrimination on an income tax return. Court's instruction B provides:

A taxpayer's return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations adopted by the Commission.

The knowing and willful filing of such a document is a violation of the law unless the defendant can establish that his failure to supply the required information was legally justified and the burden of establishing such a justification is on the defendant and until the defendant makes such a showing, the government is not required to prove that the defendant's failure to file was unjustified.

---

3. It is unclear from the record ("Your Honor, I—we strenuously object to this") whether defense counsel was objecting to the text of court's instructions B and C or objecting to the procedure of the court tendering its own instructions.

4. The district court gave the jury accurate and clear instructions to the effect that the government bore the burden of proof:

[t]he government has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the government throughout the case and never shifts . . .

\* \* \* \* \* \*

[I] am going to summarize as to what the burden is the government has . . . to sustain the charge of failure to file an income tax return . . . the government must prove the following proposition [sic] beyond a reasonable doubt: First, that the defendant was required to file a return; second, that the defendant knew that he was so required; and third, that he willfully and knowingly failed to file such a return.

\* \* \* \* \* \*

[t]he government must prove beyond a reasonable doubt that the defendant was a person required by law to file a return for the years '76 and '77, that he failed to file such a return at the timend that his failure to file was willful.

Political or social protest does not constitute a valid legal justification for failure to file a tax return containing sufficient information as required by law from which the tax can be computed.

█ A tax form which does not disclose sufficient information from which tax liability can be calculated is not a tax return under the Internal Revenue Code. *United States v. Moore,* 627 F.2d 830, 834 (7th Cir. 1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *United States v. Stout,* 601 F.2d 325, 328 (7th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979); *United States v. Jordan,* 508 F.2d 750, 751–52 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975). Moreover, a taxpayer must make a colorable showing that he is involved in some activity for which he could be criminally prosecuted in order to validly claim the Fifth Amendment privilege on his income tax return. *United States v. Karsky,* 610 F.2d 548, 550 n.5 (8th Cir. 1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1058, 62 L.Ed.2d 781 (1980); *United States v. Daly,* 481 F.2d 28, 30 (8th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).[5]

Court instruction C states:

An individual who refuses to disclose the amount of his income derived from a legitimate source on the grounds that such disclosure would violate his Fifth Amendment privilege against self-incrimination has improperly invoked and asserted the Fifth Amendment privilege, unless he can show some possibility that such a disclosure may lead to a criminal prosecution.

The mere unsupported assertion of a Fifth Amendment privilege, without some additional explanation, does not establish that the invocation of the Fifth Amendment was proper.

An improper invocation of the Fifth Amendment is not an adequate justification for failure to file a tax return.

Instruction C, like court instruction B, accurately states the law by requiring the defendant to come forward with something more than a bald assertion of the privilege in order to validly invoke the Fifth Amendment on his tax return. *Karsky,* 610 F.2d at 548, 550 n.5; *Daly,* 481 F.2d at 30. *See also United States v. Neff,* 615 F.2d 1235, 1240 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980); *United States v. Carlson,* 617 F.2d 518, 523 (9th Cir.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980).

██ The district court's instructions B and C properly indicated that the defendant had to establish the affirmative defense of the Fifth Amendment privilege. Verkuilen's blanket assertion of the privilege on his income tax return was an ineffective invocation of the privilege. *See, e.g., Stout,* 601 F.2d at 328; *Jordan,* 508 F.2d at 752. Verkuilen needed to show that his invocation of the privilege was based upon a colorable claim that he was involved in activities for which he could be criminally prosecuted and that such activities would be revealed if he supplied data on his 1040 form. Appellant failed to make such a showing.[6]

---

5. In *Daly,* 481 F.2d at 30, the defendant claimed in an exhibit attached to his 1040 form that the Fifth Amendment privilege against self-incrimination entitled him to refrain from providing income information on his tax return. The court held that the defendant's invocation of the Fifth Amendment was not legally justified because he

[m]ade no reasonable showing with respect to how the disclosure of the amount of legal fees he received during the years in question . . . could possibly incriminate him.

Similarly, in *Karsky,* 610 F.2d at 550 n.5, the defendant filed an income tax form with the word "object" entered on the lines requiring income data. The Eighth Circuit held that Karsky's claim of Fifth Amendment privilege against self-incrimination was invalid because he failed to show any possibility that his disclosure of income information might result in a criminal prosecution.

6. While no evidence was adduced at trial which indicated that providing income information on his tax return would have revealed activities for which appellant could have been criminally prosecuted, appellant conceded during an in-camera discussion with the district court judge during the sentencing hearing that his Fifth Amendment claim was not based upon any activities for which he could be criminally pros-

Third, the evidence of defendant's guilt is formidable, a factor in determining whether the alleged error in jury instructions had a probable impact on the jury's determination that appellant was guilty. *Jackson,* 569 F.2d at 1010; *United States v. Pinto,* 503 F.2d 718, 724 (2d Cir. 1974). Evidence adduced at trial tended to show that (1) Verkuilen earned sufficient income during 1976 and 1977 to be required by law to file an income tax return; (2) documents which he filed with the IRS did not contain sufficient income information from which tax liability could be computed; and (3) Verkuilen's failure to file proper income tax returns was willful. He had admitted in an interview with IRS special agents that he knew his tax returns were unacceptable. Based upon a review of the entire record, it is unlikely that the alleged error in giving court's instructions B and C had any effect on the jury verdict in this case.

■ Moreover, Verkuilen argues that court's instructions B and C removed the presumption of innocence which all criminal defendants are entitled to. The court gave the following charge with respect to the presumption of innocence:

> [t]he defendant is presumed to be innocent of the charges made in this information and this presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

Additionally, the court advised the jury at the outset of the proceedings that the defendant is presumed innocent and the presumption remains with him throughout the trial. We accordingly find no merit in Verkuilen's contention regarding the removal of the presumption of innocence.

Finally, Verkuilen contends that the jury was not properly instructed as to his theory of defense. Contrary to defendant's assertions on appeal, the district court gave the very instruction which defense counsel tendered to the court.[7] Appellant, however, insists that the court should have given *additional* instructions regarding a good-faith assertion of the Fifth Amendment privilege. Verkuilen relies on *Karsky,* 610 F.2d at 549, for the proposition that the district court erred in refusing supplementary good-faith instructions.

■ Appellant's contentions are contrary to the holdings of the Supreme Court, as well as to the holdings of this court. In *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), the Court held that, in a prosecution for willfully filing false income tax returns,[8] the proper definition of willfulness is "a voluntary, intentional violation of a known legal duty." *Id.* at 12, 97 S.Ct. at 23; *United States v. McCorkle,* 511 F.2d 482, 484–85 (7th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). An additional instruction on good faith [is] unnecessary." *Pomponio,* 429 U.S. at 12–13, 97 S.Ct. at 23–24.

■ This court has consistently approved the *Pomponio* instruction on willfulness in section 7203 cases, holding that when this instruction is given, no further good-faith defense instruction is required. *See United States v. Moore,* 627 F.2d 830, 833 (7th Cir. 1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *United States v. Sawyer,* 607 F.2d 1190, 1192 (7th Cir. 1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980). In the case *sub*

---

ecuted. Appellant called his assertion of the privilege a "mistake."

7. The court gave the following instruction:
   Now, it is the defendant's theory of the case that he did not willfully and knowingly fail to make or file an income tax form for the year 1976 and 1977 as charged ... and that he acted in good faith in filing the documents that he did file ....

8. 26 U.S.C. § 7206(1) (1954). Willfulness is an essential element of the Section 7203 offense charged here as well. "Willfulness" has the same meaning for the purposes of both section 7203 and section 7206. *United States v. Bishop,* 412 U.S. 346, 360–61, 93 S.Ct. 2008, 2017–18, 36 L.Ed.2d 941 (1973).

*judice,* the district court gave precisely the instruction which the Supreme Court approved in *Pomponio.* No additional good-faith instruction was necessary.[9]

### III.  Admissibility of W–4 Form Evidence

Appellant contends that the court erred in allowing into evidence testimony concerning Verkuilen's 1974 and 1976 withholding tax forms (form W–4 and W–4(e)). The appellant claimed two allowances on his W–4 form for 1974.  In his 1976 W–4 form, appellant claimed ten allowances. Then, in 1976 appellant filed a W–4(e) form, claiming that he was totally exempt from federal taxes.  Appellant argues that such evidence is immaterial in a failure to file prosecution, and that he was consequently convicted based upon a trial of issues not charged in the information.

■■■ Evidence of other crimes, wrongs, or acts is admissible to prove intent, knowledge, or motive, Fed.R.Evid. 404(b), if such acts have a "substantial relevance" to an issue other than general criminal character.  *United States v. McPartlin,* 595 F.2d 1321, 1343 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).  In this case, evidence of other acts for which appellant was not charged is admissible to establish willfulness and "to show a single scheme or common pattern of illegal conduct."  Fed.R.Evid. 404(b).  *United States v. Hampton,* 457 F.2d 299, 302 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *Turner v. United States,* 426 F.2d 480, 483–84 (6th Cir. 1970), *cert. denied,* 402 U.S. 982, 91 S.Ct. 1646, 29 L.Ed.2d 148 (1971); *United States v. Marine,* 413 F.2d 214, 216 (7th Cir. 1969), *cert. denied,* 396, 1001, 90 S.Ct. 550, 24 L.Ed.2d 493 (1970).  The district court, however, must determine "whether the danger of undue prejudice outweighs the probative value of the evidence."  Fed.R.Evid. 404(b), 403; *United States v. O'Brien,* 618 F.2d 1234, 1239 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980).

■■■ The W–4 forms were material to establishing willfulness, an essential element of the failure to file offense.  If Verkuilen claimed the proper number of allowances in 1974 and thereafter took more allowances than he was entitled to under 26 U.S.C. § 3402(f)(1) (1954), the jury was entitled to find, in view of the evidence as a whole, that appellant's failure to file proper income tax forms in 1976 and 1977 was willful, rather than inadvertent.  *Cf. United States v. Moore,* 627 F.2d 830, 832 (7th Cir. 1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981) (use of earlier returns to show willfulness); *Stout,* 601 F.2d at 329 (evidence of defendant's prior conduct as to filing tax returns to show willfulness).  *See also United States v. Rifen,* 577 F.2d 1111, 1113 (8th Cir. 1978); *United States v. Farris,* 517 F.2d 226, 229 (7th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975).  The court considered appellant's materiality objections in a pretrial motion *in limine,* as well as during trial and concluded that the probative value of the W–4 evidence outweighed any possible prejudice.  The district court properly exercised its discretion in so ruling. *See O'Brien,* 618 F.2d at 1239.

■■■ The W–4 evidence also tended to establish that Verkuilen's failure to file proper income tax forms was motivated by a desire to avoid paying additional income taxes, rather than by a valid assertion of the Fifth Amendment privilege against self-incrimination.  For example, by claiming additional allowances in 1976, the appellant received more take-home pay and paid less tax than he was obligated to pay.  Accordingly, we hold that the W–4 form evidence was admissible as evidence tending to show a pattern of illegal conduct.

### IV.  Section 6020 Contentions

■■■ Appellant further alleges error in the district court's instruction A, which provides:

Now, you heard some evidence in connection with the next instruction that I

---

**9.**  Moreover, *Karsky,* the case appellant relies on, held that no additional good-faith instructions were required when the good-faith defense was covered in a previous instruction.

am about to give you that you may recall with reference to the Internal Revenue in one—that is, with reference to the fact that in one instance, at least, or in one year, a return was filed by the—or was prepared by the government or by the Internal Revenue, and filed.

The jury is instructed that the provisions of the Internal Revenue Code require that each person obligated to pay income tax must file and prepare a tax return. Though the law does *permit* the Secretary of the Treasury to prepare a return for an individual who has not filed, the law does not require the Secretary to do so and the Secretary's discretion in this matter in no way reduces the obligation of the individual taxpayers to file their returns. (emphasis added).

Court's instruction A is based upon 26 U.S.C. § 6020(b)(1) (1954) (amended 1968), which provides:

> If any person fails to make any return . . . required by any internal revenue law or regulation made thereunder at the time prescribed therefore, . . . the Secretary or his delegate *shall* make such return from his own knowledge and from such information as he can obtain through testimony or otherwise. (emphasis added).

Appellant notes that the court's instruction A states that the Secretary is "permitted" to file a return for the taxpayer, while 26 U.S.C. § 6020(b)(1) states that the Secretary "shall" make such a return. Appellant argues that since the Secretary made a Treasurer's return for Verkuilen in 1975, the same procedure should have been followed in 1976 and 1977 (and for all future years, for that matter), rather than filing a criminal information against appellant pursuant to 26 U.S.C. § 7203. Appellant urges that the word "shall" in section 6020(b)(1) is a command that a Treasurer's return be filed in Verkuilen's circumstances and that the court's instruction A misstates the law in saying that the Secretary is "permitted" to prepare such a return.

At oral argument, counsel was asked whether he would agree that a detected shoplifter who is gratuitously excused by the shopkeeper on one occasion may steal thereafter without fear of sanction. Counsel attempted to distinguish his position by stating that stealing is "intrinsically wrong," whereas failure to file a proper income tax form is not. Such distinctions are unpersuasive.

Moreover, the tax court in *Hartman v. Commissioner of Internal Revenue*, 65 T.C. 542 (1975), held that 26 U.S.C. § 6020(b)(1) does not make it mandatory that the Secretary of the Treasury file a tax return before issuing a statutory notice of deficiency. The court emphasized that the bulwark of our income tax system is voluntary self-reporting. *See generally United States v. Carlson*, 617 F.2d 518 (9th Cir.), *cert. denied*, 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980). Accordingly, we hold that the district court did not err in giving court's instruction A.

## V. *In-Camera Discussion With Defendant During Sentencing*

Appellant contends that his Sixth Amendment right to counsel was abridged because defense counsel was not present during an in-camera discussion between the district court judge and Verkuilen during the sentencing hearing. At the time of sentencing, the district judge asked appellant whether he had a good-faith affirmative defense of self-incrimination. The following colloquy took place between the court and appellant, in the presence of defense counsel:

> THE COURT: Well, do you want to tell me about it at this time?
>
> [Defendant]: I'd rather not here, not in public.
>
> THE COURT: Do you want me to hear it in camera? Without the public hearing it?
>
> [Defendant]: Yes, your Honor.

The court subsequently held an in-camera discussion with Verkuilen in the presence of the court reporter. Defense counsel was not present in chambers during the conversation.

Sentencing is a critical stage of criminal proceedings during which the right to counsel normally attaches. *Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). This right, however, may be knowingly and intentionally waived. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). As the Court said in *Johnson,* "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* at 464, 58 S.Ct. at 1023.

Verkuilen is a college graduate who informed the court that he had studied law in preparation for the Law School Admissions Test. Although appellant did not explicitly state that he wished to waive his right to counsel, he did expressly agree to the in-camera discussion without defense counsel. Moreover, counsel did not object to the in-camera proceeding. Finally, Verkuilen was not entirely denied assistance of counsel during the sentencing hearing. Defense counsel presented a comprehensive, vigorous argument in mitigation of sentence during the hearing.

An explicit statement of waiver is not essential to a finding that appellant waived his right to counsel. *See North Carolina v. Butler,* 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1758–59, 60 L.Ed.2d 286 (1979); *United States v. Ganter,* 436 F.2d 364, 370 (7th Cir. 1970). Under the circumstances of the present case, we find that appellant knowingly and intelligently waived his right to counsel during the in-camera conference.

## VI. *District Court's Admonitions to the Jury*

Additionally, appellant contends that the district court erred because "for the most part" the court failed to admonish the jury not to discuss the pending proceedings. The district court judge clearly told the jurors not to discuss the case at the end of each day of trial. Therefore, appellant's argument is without merit.

## VII. *Jury Taint*

Appellant argues that the district court abused its discretion by failing to hold an evidentiary hearing regarding jury taint. During the trial, an Assistant United States Attorney learned that one of the jurors was a cousin of the mother-in-law of an IRS employee. The prosecutor revealed his discovery to court and counsel, and requested that the juror be questioned regarding her impartiality in light of her distant relationship to the IRS employee. At this point, defense counsel stated, "I've got no problem with it." Since counsel believed that the juror's presence on the panel was not prejudicial, the court did not question the juror or hold an evidentiary hearing on the issue.

It is well recognized that a defendant has a right to trial by an impartial jury. *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The trial judge has broad discretion to remedy prejudicial influences on the jury. *United States v. Barnes,* 604 F.2d 121 (2d Cir. 1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). A party, however, must make timely and explicit objections in order to preserve an issue for review. Fed.R.Crim.P. 51. Defense counsel's express acquiescence to the manner in which the court handled the jury taint question clearly amounts to a waiver of the issue.

Even if defense counsel has waived its objection, it is necessary to determine whether the district court's failure to conduct a hearing on jury taint constitutes plain error. The plain error rule is applied in "unusual circumstances involving seriously prejudicial deficiencies in trial process." Fed.R.Crim.P. 52(b); *Reisman v. United States,* 409 F.2d 789, 791 (9th Cir. 1969). Since there was no showing of substantial prejudice here, we find that the presence of one juror on the venire who is distantly related to an IRS employee did not have a probable impact on the guilty verdict. The district court's handling of the

issue does not constitute a highly prejudicial defect in the trial proceedings.

### VIII. Request for Pre-empaneling Instruction on the IRS "Fear Factor"

■ Appellant argues that the district court abused its discretion in denying a requested pre-empaneling jury instruction. Defense counsel wanted the court to instruct the jurors that their service would not result in an IRS audit, that their tax files would not be singled out for special scrutiny, that the IRS would not retaliate against them, and that if they were later audited by the IRS, defense counsel would "investigate to determine whether the IRS has violated this instruction."

The district court denied counsel's motion for the pre-empaneling instruction on the ground that the instruction carried an unjustified implication. It was pointed out during oral argument that appellant made no showing that anyone was ever audited by the IRS as reprisal for their participation as decision-maker in a trial. Accordingly, the district court could properly conclude that defense counsel's requested pre-empaneling instruction would have planted an unwarranted seed in the jurors' minds. The court acted within its discretion in refusing to give the IRS "fear factor" pre-empaneling instruction.

### IX. Denial of Defense Subpoenas

■ Appellant urges that his Sixth Amendment right to compulsory process was violated by the district court's denial of certain defense subpoenas. The constitutional right of criminal defendants to procure the attendance of witnesses who can furnish relevant and salutary evidence for their defense is based upon both the Sixth Amendment right of the defendant "to have compulsory process for obtaining witnesses in his favor" and on the fundamental fairness requirement embodied in the due process clause of the Fifth Amendment. An accused's rights to compulsory process and to fundamental fairness are abridged when the court denies him the opportunity to secure the appearance at trial of witnesses "whose testimony would have been relevant and material to the defense." *Washington v. Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); *Roviaro v. United States,* 353 U.S. 53, 63–64, 77 S.Ct. 623, 629–630, 1 L.Ed.2d 639 (1957). There is no violation of the accused's rights, however, unless the potential witnesses could have provided relevant and material testimony for the defense. *United States v. DeStefano,* 476 F.2d 324, 330 (7th Cir. 1973).

■ The record before us is devoid of any factual showing that the testimony of the defense witnesses for whom the district court refused subpoenas [10] would have been relevant and material to the defense. In considering each subpoena requested by the defense, the district court provided appellant ample opportunity to make the required showing of relevance. The court granted the defense request for subpoenas which were accompanied by the required demonstration of relevance and materiality. The court, however, was within its discretion in denying defense requests for subpoenas where appellant failed to make such a showing.

### X. Request for Personal Voir Dire

■ Appellant further assigns as error the district court's failure to allow defense counsel to personally question the prospective jurors during voir dire and the court's failure to ask prospective jurors certain questions submitted by defense counsel. The trial judge has broad discretion regarding voir dire. *United States v. Dixon,* 596 F.2d 178, 182 (7th Cir. 1979). Rule

---

**10.** The witnesses included two IRS agents to testify about IRS procedures for the purposes of showing selective prosecution and about IRS training manuals, which appellant alleged would show improper IRS use of summonses; the United States Attorney, to demonstrate that he singled out appellant for prosecution by signing the information; an attorney who had successfully interposed a Fifth Amendment affirmative defense in a 1973 IRS summons enforcement case; and a prominent Chicago attorney who appellant alleges was not prosecuted under 26 U.S.C. § 7203 despite the attorney's failure to file individual income tax returns for three consecutive years.

24(a) of the Federal Rules of Criminal Procedure provides that the district court may conduct voir dire itself, as the district court judge did in this case. Moreover, the court need not ask prospective jurors particular questions tendered by counsel. *United States v. Conroy,* 589 F.2d 1258, 1271 (5th Cir.), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

Accordingly, the district court properly exercised its discretion in denying appellant's request for a personal voir dire. Although the court refused to ask the jurors certain questions suggested by defense counsel, the court was well within its discretion in doing so, and the court's voir dire amply covered issues regarding possible juror bias.[11]

### XI. *Preliminary Hearing*

 Appellant argues that the district court erred in denying a defense motion to dismiss for failure to hold a preliminary hearing. In support of this contention, appellant claims that he was entitled to a preliminary hearing before a magistrate because the information was unverified, compulsory process was issued, Verkuilen was denied an IRS district conference, his 1975 tax return was prepared by the IRS pursuant to 26 U.S.C. § 6020(b)(1), and allegations about appellant appeared in the press prior to trial. Even if appellant's contentions are true, he had no right to a preliminary hearing.

Rule 5 of the Federal Rules of Criminal Procedure permits an arrestee charged with a federal crime to have a preliminary hearing. Rule 5(c), however, provides, in part, that "the preliminary examination shall not be held if the defendant is indicted or if an information against the defendant is filed in district court before the date set for preliminary examination." Therefore, no preliminary hearing was required in this case. We thus find it unnecessary to address Verkuilen's claim that the district court erred in refusing to instruct the jury that they could consider the lack of a preliminary hearing regarding the validity of appellant's Fifth Amendment claim.

### XII. *Conclusion*

The remainder of appellant's contentions, not expressly addressed in this opinion, have been duly considered. They have been found devoid of merit,[12] frivolous,[13] or of insufficient consequence to justify a full discussion since it would not affect our decision.[14] The judgment of conviction and the district court's disposition of the post-trial motions are, accordingly, AFFIRMED.

---

**11.** The district court judge asked the prospective jurors whether they had read about the case; whether they knew anyone seated at counsel tables; whether they had been prosecuted for failure to file tax returns; whether any of their family members were employed by government agencies; whether they had ever been audited by the IRS; whether they could presume the defendant innocent until proven guilty and whether they had any reservations about tax laws or beliefs about their propriety. The court also told the jury that Verkuilen might be depicted as a tax protestor and asked them whether that would interfere with their ability to give the defendant a fair trial. Moreover, the court stated that Verkuilen might assert the Fifth Amendment privilege as an affirmative defense and asked the jurors "[i]f you think [the fifth amendment] should be applied, will you apply it?" to which the jurors responded affirmatively. Finally, the jurors

were asked individually whether they would be impartial, and they all stated that they would be.

**12.** Appellant further assigns as error denial of certain defense exhibits and failure of the district court to order an IRS agent to answer questions on direct examination during the defense case, which defense counsel forgot to ask the witness during cross-examination at the time of the government's case.

**13.** Appellant argues that the court erred in not allowing him to sit at the courtroom table nearest the jury box.

**14.** Appellant raised issues concerning pretrial discovery, selective prosecution, and denial of his Rule 33 motion for a new trial.