George E. LILJENFELDT, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 83–C–1550.

United States District Court, E.D. Wisconsin.

June 5, 1984.

George E. Liljenfeldt, pro se.

Joseph P. Stadtmueller, U.S. Atty., E.D. Wis., Milwaukee, Wis. by Mark E. Nebergall, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for refund of a sum paid as a percentage of a penalty imposed for the filing of a frivolous income tax return. Plaintiff *pro se* George Liljenfeldt argues that his payment should be refunded because his return was not frivolous and be-cause the statute under which the penalty was imposed, 26 U.S.C. § 6702, is unconstitutional. Federal jurisdiction is based on 28 U.S.C. § 1346. The United States has moved for dismissal of the action or, alternatively, for summary judgment, and for a protective order suspending discovery. The motion for summary judgment will be granted, and the motion for a protective order will be denied as moot.

The facts are not in dispute. On April 15, 1983, plaintiff signed an Internal Revenue Service ("IRS") Form 1040 that purported to be a federal income tax return for the year 1982. This submission is devoid of any information regarding plaintiff's income, deductions, tax owed, or refund due. All line items are either left blank or have a typewritten asterisk next to them. In the left-hand margins of both pages of the submission, the following notation appears: "*This means specific objection is made under the Fifth Amendment, U.S. Constitution. Similar objection is made to the question under the First, Fourth, Seventh, Eighth, Ninth and Fourteenth Amendments for Civil issues." Plaintiff also typed at the top of the pages: "I OFFER TO AMEND OR RE-FILE THIS RETURN EXACTLY AS YOU WISH IT, IF YOU WILL PLEASE SHOW ME HOW TO DO SO WITHOUT WAIVING MY CONSTITUTIONAL RIGHTS." The only information plaintiff provided was his name and address.

On July 12, 1983, the IRS assessed a frivolous return penalty of $500 against the plaintiff, pursuant to 26 U.S.C. § 6702. Plaintiff was notified of the assessment by a letter prepared on the same date. The letter informed the plaintiff of the proper procedure for filing a claim for refund with the IRS and for filing a lawsuit for refund if the IRS denied the claim.

On August 2, 1983, plaintiff sent the IRS a Form 843 and a letter contesting the penalty. An instrument payable in the amount of $75 accompanied the letter and the form. This amount represented fifteen percent of the penalty. By letter dated

August 12, 1983, the IRS denied the claim. Plaintiff then filed this lawsuit.

The section pursuant to which the penalty was assessed, 26 U.S.C. § 6702, is one of several new enforcement provisions of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (codified as amended in scattered sections of 26 U.S.C.). The new section provides:

**Frivolous income tax return.**

(a) **Civil penalty. If—**

(1) any individual files what purports to be a return of the tax imposed by subtitle A but which—

(A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B) contains information that on its face indicates that the self-assessment is substantially incorrect; and

(2) the conduct referred to in paragraph (1) is due to—

(A) a position which is frivolous, or

(B) a desire (which appears on the purported return) to delay or impede the administration of Federal income tax laws, then such individual shall pay a penalty of $500.

(b) **Penalty in addition to other penalties.** The penalty imposed by subsection (a) shall be in addition to any other penalty provided by law.

Prior to enactment of § 6702, persons who filed frivolous returns were subject to penalty for failure to file a return, or for negligence or fraud. *See* 26 U.S.C. § 6653 (1976), *amended by* Pub.L. No. 97–248, § 325(a), 96 Stat. 616. The penalties imposed were assessed as a percentage of the underpayment of the tax. Under this system, completion of preliminary administrative and judicial proceedings prevented imposition of a penalty for several years. *See* S.Rep. No. 494, 97th Cong., 2d Sess. 277, *reprinted in* 1982 U.S.Code Cong. & Ad. News 781, 1023. The new provision eliminates the problem of administrative delay, a significant benefit in view of the growing problem of tax-evasive activities of protest groups. The following excerpt from the

Senate Report accompanying the bill reflects Congress' concern:

The committee is concerned with the rapid growth in deliberate defiance of the tax laws by tax protestors. The Internal Revenue Service had 13,600 illegal protest returns under examination as of June 30, 1981. Many of these protestors are induced to file protest returns through the criminal conduct of others. These advisors frequently emphasize the lack of any penalty when sufficient tax has been withheld from wages and encourage others to play the "audit lottery." The committee believes that an immediately assessable penalty on the filing of protest returns will help deter the filing of such returns, and will demonstrate the determination of the Congress to maintain the integrity of the income tax system.

*Id.* at 1023–24. The prompt imposition of a penalty obviates any immediate administrative determination of the offending party's true tax liability.

The Senate Report also discusses situations in which § 6702 applies:

For example, the penalty under this provision is immediately assessable against any individual who files, as a purported Form 1040, a document appearing at first glance to be a Form 1040, but which contains altered or incorrect descriptions of line items or other altered provisions. Such purported "returns" are clearly not designed to inform the Secretary of the filer's taxable income and are not in processible form. The penalty will be immediately assessable against any individual filing a "return" in which many or all of the line items are not filled in except for references to spurious constitutional objections. Furthermore, the penalty is available against any individual filing a purported return in which insufficient information to calculate the tax is given or where the information given is clearly inconsistent (as where an individual claims 99 exemptions but lists only a few dependents) or where the return other-

wise reveals a frivolous position or a desire to impede the tax laws. Moreover, the penalty could be imposed against any individual filing a "return" showing an incorrect tax due, or a reduced tax due, because of the individual's claim of a clearly unallowable deduction, such as a "gold standard deduction" (i.e., a discount of dollars because the U.S. is not on the gold standard) or a "war tax" deduction under which the taxpayer reduces his taxable income or shows a reduced tax due by that individual's estimate of the amount of his taxes going to the Defense Department budget, etc. In contrast, the penalty will not apply if the taxpayer shows the correct tax due but refuses to pay the tax. In such a case, of course, the Secretary can assess and collect the tax immediately. The penalty will not be imposed, however, if the taxpayer merely inadvertently fails to use the correct tax table, or makes inadvertent mathematical errors on his or her return, if, [sic] however, the taxpayer deliberately uses incorrect tax tables, for example, to impede the tax system and that use otherwise satisfies the penalty requirements, the penalty will apply.

*Id.* at 1024–25. Thus, it is for the Secretary initially to determine whether the taxpayer's failure to provide accurate information is the consequence of inadvertence or a deliberate scheme to defy the tax laws. However, imposition of the penalty is reviewable in federal court. 26 U.S.C. § 6703(c).

Plaintiff's primary argument is that the penalty was unlawfully imposed, because he did not file a frivolous return. He argues that he legitimately and in good faith exercised his constitutional privilege against self-incrimination, and that to permit a penalty for exercising the privilege violates the due process clause of the fifth amendment.

■ To claim the fifth amendment privilege against self-incrimination is a popular ploy among tax protesters, but courts are generally able to winnow the instances of valid exercise of constitutional right from the instances of mere bad faith defiance and irresponsibility. For example, in the context of criminal prosecutions, the privilege does not justify an outright refusal to file an income tax return, *see United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); *United States v. Heise,* 709 F.2d 449 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 285, 78 L.Ed.2d 262 (1983), and a tax return that contains no information from which tax liability can be calculated does not constitute a return within the meaning of the Internal Revenue Code. *United States v. Verkuilen,* 690 F.2d 648 (7th Cir.1982); *United States v. Jordan,* 508 F.2d 750 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975). While the valid exercise of the fifth amendment privilege is a defense against a prosecution under 26 U.S.C. § 7203, *see Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), the defendant must "... come forward with something more than a bald assertion of the privilege in order to validly invoke the Fifth Amendment on his tax return." *United States v. Verkuilen,* 690 F.2d at 654 (citations omitted). Specifically, the defendant must make a colorable claim that he is involved in activities for which he could be criminally prosecuted, and that these activities would be revealed if he supplied data on his return form. *Id.*

■ The principle one draws from the foregoing authorities is that if a taxpayer wishes to invoke the fifth amendment privilege as a basis for refusing to provide information on his federal income tax return, the claim of privilege must be occasioned by an actual, substantial possibility of criminal prosecution and not by a conjectural or hypothetical possibility of prosecution. If the law were otherwise, anyone possessed of an ordinary imagination could claim the fifth amendment privilege on his return form even though the claim was motivated by a desire to evade the tax laws rather than by a fear of self-incrimination. I should be surprised to learn that the framers intended that the fifth amendment

could be involved solely to frustrate Congress taxing powers.

■ There is no conflict between the foregoing principle and § 6702. The statute merely reflects Congress' recognition that tax protesters are wasting administrative and judicial resources with meritless claims of constitutional privilege, and provides an efficient means of dealing with the problem. True, the decision of whether an objection is frivolous rests initially with the Secretary of the Treasury, but the provision for judicial review in 26 U.S.C. § 6702 eliminates the possibility of abuse.

■ The plaintiff did not provide any basis for his objections when he mailed his return forms. He simply typed in his name and address, and left all other line items blank or marked them with an asterisk. He did not even provide his social security number. In the absence of a detailed explanation of why the privilege was asserted, the Secretary properly determined that the return was frivolous.

In opposition to the United States' motion for dismissal or summary judgment, the plaintiff has delineated several uses to which the information elicited on Forms 1040 might be put. Insofar as the suggested uses are plausible, they are hypothetical in nature. The plaintiff has failed to show why these hypotheses are at all relevant to him, and thus he has not demonstrated that his refusal to provide information is justified.

Relying on *Hoffman v. United States*, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), the plaintiff also argues that the setting in which the questions are asked should be taken into account. Yet this factor weighs against sustaining the privilege, because Forms 1040 are generally completed in the privacy of a taxpayer's home or by an accountant of the taxpayer's choosing. The setting in which the information is elicited is quite different from post-arrest custody or grand jury proceedings, in which the possibility of duress and coercion are more likely to be present.

■ In sum, the plaintiff has utterly failed to make a colorable claim that he is involved in an activity that could subject him to criminal prosecution, and that disclosure of the information sought by the IRS could have exposed him to a substantial risk of prosecution. The claim of privilege was frivolous, and the penalty was properly assessed.*

Plaintiff's second argument is that the constitution requires a judicial hearing on the validity of the privilege before the penalty can be imposed. The argument is not altogether clear, for plaintiff states that "... due process is not the issue here" and proceeds to iterate his argument that the privilege against self-incrimination provides a legitimate basis for refusing to provide information on an income tax return. However, the argument assumes that a claimant should be allowed to litigate the validity of his claim of privilege before a penalty or any percentage thereof can be assessed.

■ The assumption is mistaken. Any constitutional requirement of a preassessment hearing would derive from the due process clause. Yet "... due process is flexible and calls for such procedural protections as the particular situation demands." *Morissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court determined that the constitutionality of administrative procedures for reviewing the termination of Social Security disability benefits was determined by reference to the governmental and private interests involved. Specifically, the Court held that three factors were to be considered: (1) the private interest that would be affected by official action; (2) the risk of an erroneous deprivation of the private interest under the established procedure and the probable value of additional procedural

---

* The plaintiff's offer, typed in the top margin of his return form, to file an amended return if the IRS can explain how he can do it without waiving his claim of privilege is self-serving and disingenuous and does not satisfy the requirement of the law.

safeguards; and (3) the governmental interest, including the function involved and the burdens that additional procedural safeguards would impose. *Id.* at 335, 96 S.Ct. at 903. Thus, a determination of whether claimants for refunds of penalties imposed under § 6702 are entitled to a preassessment judicial hearing requires reference to the three factors discussed in *Mathews.* There is no presumption that individuals are necessarily entitled to a hearing before the government can initiate action that may affect their interests.

■ An argument similar to plaintiff's was rejected in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). In that case, the petitioner argued that it had a right to a hearing prior to the IRS's pending revocation of the petitioner's tax exempt status. The Supreme Court held that postrevocation proceedings in the tax court or a district court were constitutionally sufficient:

> We do not say that these avenues of review are the best that can be devised. They present serious problems of delay, during which the flow of donations to an organization will be impaired and in some cases perhaps even terminated. But, as the Service notes, some delay may be an inevitable consequence of the fact that disputes between the Service and a party challenging the Services's actions are not susceptible of instant resolution through litigation. And although the congressional restriction to post-enforcement review may place an organization claiming tax-exempt status in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities, in light of the powerful governmental interests in protecting the administration of the tax system from premature judicial interference ....

*Id.* at 747, 94 S.Ct. at 2051. While assessment of an administrative penalty differs somewhat from the revocation of an exemption, the same interest in protecting the administration of the internal revenue system is paramount in the present case. Under 26 U.S.C. § 6703, the claimant may seek review after challenging the assessment administratively and paying fifteen percent of the assessment. In view of the strong governmental interest in protecting the tax system's integrity, this procedure is constitutionally sufficient. *See Riley v. Commissioner,* 566 F.Supp. 21 (S.D.Ohio 1983) (discussing the constitutionality of procedures under 26 U.S.C. § 6682).

■ The plaintiff has also urged that § 6702 should be declared unconstitutional on the ground that it was passed in a manner prohibited by the origination clause. Plaintiff relies on a number of "peculiarities surrounding the manner in which the 'Tax Equity and Fiscal Responsibility Act of 1982' came into being" for the proposition that TEFRA originated in the Senate, contrary to the constitutional directive that bills for raising revenue originate in the House of Representatives.

The first clause of Article I, Section 7, of the United States Constitution provides:

> All bills for raising revenue shall originate in the house of representatives; but the senate may propose or concur with the amendments as on other bills.

The legislative history of TEFRA indicates that it originated in the House of Representatives as H.R. 4961. After it was passed by the House, it underwent vast changes in the Senate. Indeed, the Senate amendment struck out all of the House Bill after the enacting clause and substituted the Senate's own text. The House and the President thereafter accepted the Senate's version.

A Senate amendment may effect a wholesale change in a bill for raising revenue, initially passed by the House, yet it does not follow that for purposes of the origination clause, the bill did not originate in the House of Representatives. *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911). In *Flint,* the Supreme Court upheld a corporation tax that had undergone a radical change in the Senate. The legislative history showed that a bill originating in the House had established an inheritance tax. In the Senate, the inheritance tax was removed from

the bill, and a corporation tax was substituted therefor. The Court held that the originating clause did not prevent the Senate from amending the bill as it had:

> The bill having properly originated in the House, we perceive no reason in the constitutional provision relied upon why it may not be amended in the Senate in the manner which it was in this case. The amendment was germane to the subject-matter of the bill and not beyond the power of the Senate to propose.

220 U.S. at 143, 31 S.Ct. at 346.

In *Frent v. United States*, 571 F.Supp. 739 (E.D.Mich.1983), the court relied on *Flint* to conclude that TEFRA was not enacted in a manner violative of the establishment clause. That holding will be followed here. Plaintiff does not, and cannot, argue that the Senate amendment to H.R. 4961 was not germane to the bill initially approved in the House, or that the Senate lacked power to propose the amendment. This constitutional challenge is thus devoid of any substance.

 Finally, the plaintiff would have the court strike down § 6702 as unconstitutionally vague. The flaw plaintiff perceives in this context is the absence of a definition of the word "frivolous." Once again, the plaintiff has injected into this argument the substance of his earlier contention that he should not be penalized for claiming his privilege against self-incrimination. However, he complains of IRS officials' "unfettered discretion" to impose penalties when they determine a claim of privilege to be invalid.

Due process requires that a statutory prohibition be " '... set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' " *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974), *quoting United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). The possibility of marginal cases in which doubts may arise does not render a statute unconstitutionally vague. *Id.*

The language of § 6702 is not so arcane, or susceptible of so many interpretations, that a person of ordinary intelligence could not know what conduct is prohibited. In particular, the word "frivolous" is common in the vernacular of the layperson. Webster's Third New International Dictionary (unabridged ed. 1976) provides two definitions for the word, the first of which is pertinent here:

> 1: of little weight or importance: having no basis in law or fact: LIGHT, SLIGHT, SHAM, IRRELEVANT, SUPERFICIAL...

This is the sense of the word that Congress contemplated when § 6702 was enacted, and it reflects popular understanding. There may be situations where the purported frivolity of a return could be disputed, but the legislative history quoted earlier provides adequate guidance. Congress was not required to enumerate all the possible ways in which a return could be frivolous.

The remainder of plaintiff's objections merit no discussion. Congress is not required to employ statutory language, or provide procedural safeguards, that can meet every conceivable exigency. The legislation must be constitutional, but within the boundaries of the Constitution, it can be tailored in the manner Congress finds appropriate. The statute under scrutiny here was a pragmatic response to the increasing problem of frivolous tax returns. It does not penalize people who legitimately claim the privilege against self-incrimination; it penalizes people who merely do not feel like carrying their share of the nation's tax burden. The manner in which it was passed was consistent with the Constitution, the procedural safeguards are adequate, and the language is sufficiently clear. It was properly enforced against the plaintiff.

IT IS THEREFORE ORDERED that the United States' motion for summary judgment is granted, and the plaintiff is ordered to pay the penalty.

IT IS FURTHER ORDERED that the United States' motion for a protective order is denied as moot.

IT IS FURTHER ORDERED that costs be assessed against the plaintiff.