826 F.2d 1061
 23 Fed. R. Evid. Serv. 936
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph B. WALLMEYER, Defendant-Appellant.
 No. 87-5506
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1987.
Decided Aug. 13, 1987.
 
 Kirk A. McCarville (Donald W. MacPherson, on brief), for appellant.
 John Carroll McDougal, Special Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-appellant Joseph B. Wallmeyer was convicted of tax evasion, in violation of 26 U.S.C. Sec. 7201 (1982), and of knowingly submitting a false document to the Internal Revenue Service (IRS), in violation of 18 U.S.C. Sec. 1001 (1982). Wallmeyer's offenses were inspired by his membership in a group known as 'Americans for Constitutional Taxation' (ACT), which taught its members methods of tax avoidance. On appeal, Wallmeyer challenges his conviction on several procedural grounds. Because we find none of these grounds to have merit, we affirm Wallmeyer's conviction.
 
 I.
 
 2
 Joseph B. Wallmeyer worked for several years as an equipment repairman for the International Business Machines Corporation (IBM) in Virginia. Wallmeyer was employed by IBM when he joined ACT in 1981. ACT, which was founded by Travis Brownlee, advocated the nonpayment of taxes based on various theories. Brownlee's group assisted its members in avoiding the payment of all forms of taxation, including federal and state income taxes, state personal property taxes, and state automobile and driver's license fees.
 
 
 3
 Wallmeyer participated in ACT's tax avoidance scheme. Beginning with the 1980 tax year, he ceased filing federal and state tax returns. Wallmeyer claimed to have 'purchased' a foreign trust; he filed false W-4 forms with IBM, listing 26 allowances for claimed interest deductions of $28,000. The deductions, which eliminated Wallmeyer's tax liability, represented repayment of loans which the trust purportedly made him. In accordance with the W-4 forms, IBM stopped withholding all federal and state taxes from Wallmeyer's wages. Wallmeyer subsequently submitted false documents concerning these loans to the IRS. Additionally, Wallmeyer bought counterfeit license plates and a counterfeit driver's license ostensibly issued by the 'Turks & Caicos Islands,' in order to avoid license fees.
 
 
 4
 Wallmeyer was indicted by a federal grand jury in April, 1986. Counts I and II of the indictment charged Wallmeyer with tax evasion, in violation of 26 U.S.C. Sec. 7201 (1982), for the tax years 1981 and 1982, respectively. Count III charged him with knowingly submitting false documents to the IRS, in violation of 18 U.S.C. Sec. 1001 (1982). The case was tried before a jury in October, 1986. After deliberating for approximately seven hours, the jury found Wallmeyer not guilty on Count I and guilty on Counts II and III. The district court placed Wallmeyer on probation, conditioned on his filing a proper W-4 form with IBM. When Wallmeyer subsequently violated this condition, the court revoked his probation and ordered him incarcerated. Wallmeyer then filed this appeal.
 
 II.
 
 5
 Wallmeyer's principal contention on appeal is that the district court erred in denying his request for disclosure of certain exculpatory material. On Sunday, October 12, 1986, two days before trial, the government supplied Wallmeyer with material regarding Dawn Henkle, a government witness who was Brownlee's secretary and former mistress. This material included an agreement between Henkle and the government, whereby all charges against Henkle were dropped in exchange for her cooperation; a transcript of Henkle's testimony before IRS agents; and a transcript of Henkle's testimony in a case involving another ACT member.[1]
 
 
 6
 The next day, defense counsel made a Brady request for all materials in the government's file on both Henkle and Brownlee. See Brady v. Maryland, 373 U.S. 83 (1963) (when government has evidence favorable to accused, which is material to guilt or punishment, due process requires that government furnish that evidence to accused upon request). The trial court denied Wallmeyer's Brady request both before trial and when the request was renewed on the opening day of trial. After he was convicted, Wallmeyer moved for a judgment of acquittal, arguing that he did not receive essential Brady materials. The trial court denied his motion.
 
 
 7
 We think the motion for a judgment of acquittal was properly denied. Wallmeyer had made a Brady request for any material in the government's file on Brownlee which showed that Brownlee influenced ACT members. He also requested taped conversations between Brownlee and potential defense witnesses, and information concerning Henkle's income tax returns. Wallmeyer sought such information to show that Brownlee misled ACT members, including Wallmeyer, inducing them to participate in tax evasion schemes by misrepresenting such schemes as legal.
 
 
 8
 The government did not comply with Wallmeyer's request. Such noncompliance is a Brady violation only if the government suppressed the requested evidence, and if that evidence was material to Wallmeyer's conviction. The Supreme Court recently refined the standard of materiality for putative Brady violation in United States v. Bagley, 473 U.S. 667 (1985). In Bagley, the Court stated that 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' Id. at 682.
 
 
 9
 In this case, the government did not commit a Brady violation, for at least two reasons. First, the government did not suppress the information that Wallmeyer sought. The government gave Wallmeyer all of the documents in its Brownlee file which had Wallmeyer's name on them. The government also procured for Wallmeyer the tape recordings which he requested. The evidence concerning Henkle was not suppressed. Wallmeyer had independent access to the pertinent information which he sought about Henkle, because Henkle had previously testified in a trial involving another ACT member. Wallmeyer's counsel had attended that trial, and had heard Henkle's testimony.
 
 
 10
 Additionally, much of the information that Wallmeyer sought, especially with respect to Brownlee's persuasive powers, was not material to Wallmeyer's guilt or innocence. The statements that Brownlee made to other ACT members were not directly relevant to Wallmeyer's state of mind. The fact that some fellow ACT members were swayed by Brownlee's rhetoric does not mean that Wallmeyer was similarly influenced. Moreover, all of the evidence which Wallmeyer sought was largely cumulative. The jury had been informed that Brownlee led a group of tax protesters, and that he preached tax evasion to his followers. From this information, the jury could have inferred that many of Brownlee's followers believed his representations.
 
 III.
 
 11
 Wallmeyer's other contentions warrant only a brief mention. The government introduced an exhibit showing that Wallmeyer's Virginia driver's license had expired; this was introduced to indicate that Wallmeyer was evading license fees. A second exhibit showed that Wallmeyer's mother did not have a license to drive a motorcycle (Wallmeyer was charged with unlawfully transferring his motorcycle to his mother). The exhibits also contained notations of minor traffic convictions which Wallmeyer and his mother had incurred. According to Wallmeyer, these notations were evidence of other crimes, which was improperly admitted under Fed. R. Evid. 404(b), requiring reversal of his conviction. The government acknowledges that the traffic convictions were irrelevant to the charges against Wallmeyer, but asserts that their admission was harmless error.
 
 
 12
 We agree with the government. In determining whether reversible error was committed by improper receipt of other-crimes evidence, we must look at the record as a whole; factors such as an absence of prosecutorial misconduct and overwhelming evidence against a defendant mitigate the dangers arising from improper receipt of such evidence. See United States v. Johnson, 610 F.2d 194, 196-97 (4th Cir. 1979), cert. denied, 446 U.S. 911 (1980). These mitigating factors are present in Wallmeyer's case. The prosecutor made no independent observations about the traffic convictions, and the evidence strongly suggested Wallmeyer's culpability. The trial court, then, did not commit reversible error in admitting evidence of the traffic convictions.[2]
 
 
 13
 Wallmeyer also urges us to reverse his conviction on the basis of grand jury abuse. He argues that the prosecutor improperly allowed an IRS special agent to testify about Brownlee's conviction and fugitive status, implying that Wallmeyer was guilty by association with Brownlee. The introduction of the agent's remark does not constitute grand jury abuse. The agent simply described Brownlee's status in response to a grand juror's question. Instead of capitalizing on this remark, the prosecutor cautioned the grand jurors that they should consider Wallmeyer's case separate and apart from Brownlee's conviction. The trial court properly denied Wallmeyer's motion for a judgment of acquittal based upon grand jury abuse.[3]
 
 
 14
 Finally, Wallmeyer claims that the trial court erred in not allowing defense counsel to ask about the occupations of certain jurors during voir dire. This error allegedly prevented counsel from making effective use of his peremptory challenges.
 
 
 15
 Prior to trial, both parties received a potential jury list, showing the occupations of all but three potential jurors. The defense then submitted a number of voir dire questions. During voir dire, defense counsel was allowed to make several additional inquiries after the court questioned the potential jurors. Defense counsel did not ask about the occupations of the prospective jurors whose jobs were not listed. At the close of voir dire, the court announced that, in the absence of objection, the panel would be qualified. Defense counsel did not raise any objections at that time. It was not until after the list of jurors was read, including two jurors with unidentified occupations, that defense counsel pointed out the lack of information about two of the jurors' occupations. The trial court refused to make any further inquiries of the jurors, stating that defense counsel should have requested information about their occupations earlier in the proceedings.
 
 
 16
 The trial court was correct: counsel failed to make a timely objection, and therefore did not preserve the issue on appeal. See, e.g., United States v. Verkuilen, 690 F.2d 648, 658 (7th Cir. 1982). In this case, defense counsel actually passed up not one but three opportunities to object to the lack of listed occupations of the potential jurors. Counsel could have raised this issue when he submitted his proposed voir dire questions to the court, when he asked additional questions during voir dire, or when the court, in qualifying the jury, paused for objections. Counsel's failure to avail himself of any of these opportunities constitutes waiver.
 
 
 17
 Since Wallmeyer has not presented any arguments compelling us to reverse his conviction, that conviction is affirmed.[4]
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 This material was supplied pursuant to Wallmeyer's request under the Jencks Act, which concerns statements made by government witnesses, see 18 U.S.C. Sec. 3500 (1982)
 
 
 [2]
 These convictions involved minor offenses, unrelated to the issues in this case. Wallmeyer had one speeding conviction and one conviction for improper driving. Wallmeyer's mother had one conviction for failing to obey a traffic sign
 
 
 [3]
 Wallmeyer also complains of prosecutorial misconduct and grand jury abuse based upon the alleged Brady violations and the admission of the traffic convictions. We reject his complaints for the reasons set out above, in the discussion of these issues
 Additionally, Wallmeyer asserts that the prosecutor misled the jury by indicating that the ACT leaders did not tell their followers that the tax schemes were legal. The evidence before us does not support the assertion that the jury was misled.
 
 
 [4]
 In affirming Wallmeyer's conviction, we also deny his motions for a stay and for a release on bail