UNITED STATES of America, Plaintiff-Appellee,

v.

**Lloyd TAYLOR, Defendant-Appellant.**

No. 82–3096.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1983.

Decided Feb. 16, 1984.

---

Robert J. Weber, Robert J. Weber, Ltd., Chicago, Ill., for defendant-appellant.

Susan Bogart, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.*

COFFEY, Circuit Judge.

Defendant-Appellant, Lloyd Taylor, appeals his conviction in the United States District Court, Northern District of Illinois, for possession of an unregistered machine gun and an unregistered silencer in violation of 26 U.S.C. § 5861(d) (1976). We affirm.

I

The evidence at trial revealed that appellant, Taylor, and his wife, Yolanda, resided in a one-story townhouse, with an adjoining basement, located at 1141–A N. Noble, Chicago, Illinois. On January 12, 1982, at approximately 9:30 p.m., Officer Siwek of the Chicago Police Department, Gang Crimes North, obtained a search warrant from the Cook County Circuit Court to search Lloyd Taylor and the townhouse at 1141–A N. Noble, Chicago, Illinois, for cocaine and proof of residency. At approximately 10:30 p.m., on that same evening, Officer Matthews, a plain clothes investigator for the Chicago Police Department, Gang Crimes North, accompanied two uniformed police officers to Taylor's townhouse and knocked

---

* Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

on the door. Upon opening the door, Taylor was asked if he was the owner of a black "Lincoln Continental" parked adjacent to the townhouse and if, in fact, he was Lloyd Taylor. When Taylor responded to both questions in the affirmative, the police officers entered the premises and handed Taylor a copy of the search warrant.[1] Officer Matthews conducted a protective frisk of Taylor and instructed him to "sit on the couch" while the police officers searched the townhouse and adjoining basement for cocaine and proof of residency. Prior to seating Taylor on the couch, Officer Matthews conducted a "cursory search" of the surrounding area. Under the couch Matthews discovered a .9 millimeter Swedish-made automatic submachine gun, with a fully loaded 36 round clip and one round in the chamber, and a silencer that fit over the barrel of the machine gun.[2] Upon discovery of the machine gun and silencer, Matthews arrested and handcuffed Taylor, advised Taylor of his "Miranda" rights, and instructed him to remain seated on the couch while the police officers searched the townhouse and adjoining basement for cocaine and proof of residency.

During the ensuing search, the police discovered and seized additional guns, including nine pistols stored in an attache case in the basement and one .30 caliber rifle concealed in the bedroom closet.[3] The police also recovered "a package containing a white powdered substance," which at that time they "felt to be cocaine," from a false-bottomed "Brut 33" deodorant spray can on a "shelf area next to the kitchen." From a false ceiling in the basement, the police recovered another bag of white powder, believed to be cocaine, jewelry, and $5,367 in U.S. currency. A police lab test later revealed that the "white powder" seized from Taylor's townhouse was, in fact, 10.48 grams of cocaine.

While continuing the search for cocaine and proof of residency, the officers discovered and seized numerous pieces of stereo and video equipment, many with their serial numbers removed or defaced. The officers also recovered various articles of clothing, including fur coats and leather jackets, all with their labels removed. During the course of the search, Officer Siwek questioned Taylor about the property that police had recovered from the basement and Taylor responded that "his friend, who went to Texas, left it in his custody a few days prior to leaving." Following the search, Taylor was taken to police headquarters where he informed Special Agent Malone of the Bureau of Alcohol, Tobacco and Firearms that the guns "must have been left from a friend of his from Texas." At no time did Taylor supply police officers with the name of this alleged friend from Texas.

Based upon this information, a Federal Grand Jury returned a two-count indictment against Taylor charging him with possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d) and possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d). On October 26, 1982, the case went to trial before a jury and at that time Taylor asserted an alibi defense that he had no knowledge of the presence of the machine gun or the silencer

1. Officer Matthews testified that there were a total of ten Chicago Police officers involved in the search of Taylor's residence. Officer Siwek testified that the officers "split [them]selves up into security outside the premises," while Investigator Matthews, in plain clothes, and two uniformed police officers used a ruse to get into Taylor's townhouse without a forced entry. The ruse consisted of Matthews putting his hands behind his back as though in custody and approaching the front door of Taylor's residence with a uniformed officer on each side. When Taylor opened the door, a uniformed officer asked Taylor if he was "the owner of a black Lincoln Continental that had been parked to the front of that address." Taylor responded in the affirmative and the uniformed police officers informed Taylor that they had "caught Investigator Matthews breaking into [Taylor's] car." The officers then entered Taylor's townhouse and handed him the search warrant.

2. The police officers later performed a routine registration check on the machine gun and the silencer and determined that neither item had ever been registered.

3. A subsequent routine registration check of these guns revealed that none of them were registered to Taylor.

in his townhouse on January 12, 1982. Taylor testified that from January 4, 1982, until January 12, 1982, he and his wife were visiting his step-sister in Milwaukee, Wisconsin and that a former employee of his, Janet Simmons, and her husband, were staying in this townhouse. Taylor further testified that he and his wife returned to Chicago between 9:00 p.m. or 9:15 p.m. on January 12, 1982, but when they arrived at their townhouse the Simmonses were not present.[4] According to Taylor's alibi defense, the guns, including the nine pistols, the .30 caliber rifle, and the machine gun with silencer, the clothing, including fur coats and leather jackets with their labels removed, and 10.48 grams of cocaine, all belonged to the Simmonses, whom Taylor had not seen or heard from since January 4, 1982. Taylor claimed to have no knowledge of the presence of these items in his townhouse on the evening of January 12, 1982. Taylor admitted, however, to having knowledge of the stereo and video equipment present in his townhouse on that same evening. Taylor explained the presence of this equipment, many pieces with serial numbers removed or defaced, as items he had purchased at flea markets and was planning to resell as part of his record business. Taylor testified that he stored the stereo and video equipment at his townhouse because of two recent burglaries, in June and October of 1981, at his place of business, Worldwide Records, 1268 N. Milwaukee, Chicago, Illinois. Taylor also acknowledged ownership of the jewelry discovered by police behind a false ceiling in the basement,

maintaining that it too was purchased at flea markets. In addition, Taylor claimed that the $5,367 in U.S. currency was money earned from the resale of items purchased at flea markets and was to be used for a business trip to Hawaii.

Based upon this evidence, the jury returned a guilty verdict on both counts and the district court sentenced Taylor to a three-year period of incarceration for possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d), and a concurrent three-year period of incarceration for possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d). On appeal, Taylor contends that:

A. The evidence presented by the Government was insufficient to prove that appellant knowingly possessed the machine gun and the silencer.

B. The district court erred in admitting evidence of items, other than the machine gun and silencer, seized from appellant's townhouse.

C. The Government's cross-examination of appellant was improper.

We shall deal with these issues individually.

**II**

**A. POSSESSION UNDER 26 U.S.C. § 5861(d)**

The appellant contends that in order to violate 26 U.S.C. § 5861(d), a person must "knowingly possess" an unregistered firearm.[5] *See, e.g., United States v. Freed,* 401 U.S. 601, 612, 91 S.Ct. 1112, 1119, 28 L.Ed.2d

---

4. At trial, Taylor called four witnesses in an attempt to support his testimony that between January 4, 1982, and January 12, 1982, he was in Milwaukee, Wisconsin and the Simmonses were staying at his townhouse. Mary Williams, Taylor's neighbor, testified that she visited Taylor's townhouse on the "sixth or seventh" of January and was told by an unknown woman that Taylor was not home. James Collins, Taylor's business partner at Worldwide Records, testified that he did not see Taylor between January 5, 1982, and January 12, 1982, but that every day during that period Janet Simmons visited the store. In addition, Collins testified that he visited Taylor's townhouse between January 5, 1982, and January 12, 1982, and that he was greeted at the door by Mrs.

Simmons. Jane Smith, Taylor's step-sister, testified that Taylor stayed at her house in Milwaukee, Wisconsin, from January 4, 1982, until 7:15 p.m. or 7:30 p.m. on January 12, 1982. Yolanda Taylor, Taylor's wife, testified that she and her husband were in Milwaukee, Wisconsin from January 4, 1982, to January 12, 1982, and that they returned to Chicago around 9:00 p.m. on January 12, 1982.

5. Title 26 U.S.C. § 5861(d) provides:
   "It shall be unlawful for any person—
   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

356 (1971) (Brennan, J., concurring). The appellant claims that in this instance the Government failed to introduce sufficient evidence to prove that Taylor "knowingly possessed" the machine gun and silencer found in his townhouse on January 12, 1982. According to the appellant, the Government's evidence proved only that Taylor owned the premises at 1141–A N. Noble, Chicago, Illinois, not that he possessed the machine gun and silencer contained therein. The appellant reasons that mere ownership of a townhouse, allegedly occupied by a former employee and her husband, between January 4, 1982, and January 12, 1982, does not satisfy the possession requirement of 26 U.S.C. § 5861(d). To support his position, the appellant relies upon the language in *United States v. Craven*, 478 F.2d 1329 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973) (*"Craven "*), where the United States Court of Appeals for the Sixth Circuit interpreted "possession" under 26 U.S.C. § 5861(d), and stated that "possession of the residence is insufficient to establish possession of all the contents of the house." 478 F.2d at 1333.[6] The appellant claims that in this instance the machine gun and silencer belonged to the Simmonses and that the presence of these unregistered firearms in his townhouse, without his knowledge, does not constitute knowing possession on his part.

We initially note that the appellant challenges only the sufficiency of the Government's evidence on the issue of knowing possession, not the legal definition of possession under section 5861(d), including actual or constructive possession of a firearm, or the district court's instructions to the jury on what constitutes possession for purposes of 26 U.S.C. § 5861(d). It is a well-established principle of Federal law that when the sufficiency of evidence in a criminal conviction is questioned, the reviewing tribunal examines the record in the light most favorable to the Government. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Carter*, 720 F.2d 941, 946 (7th Cir.1983). It is not our prerogative to retry the case, weigh the evidence, or assess the credibility of witnesses. *United States v. Carter*, 720 F.2d at 946; *United States v. Miles*, 401 F.2d 65, 67 (7th Cir.1968). The verdict will not be disturbed if substantial evidence and reasonable inferences therefrom support the action of the jury. *United States v. Carter*, 720 F.2d at 946; *United States v. Grabiec*, 563 F.2d 313, 316 (7th Cir.1977); *United States v. Isaacs*, 493 F.2d 1124, 1246 (7th Cir.), *cert. denied sub nom. Kerner v. United States*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

■ A review of relevant case law reveals that the term "possession," for purposes of 26 U.S.C. § 5861(d), is well-defined:

"Possession may be either actual or constructive and it need not be exclusive but may be joint.... Actual possession exists when a tangible object is in the immediate possession or control of the party. *Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others* .... Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt." (citations omitted) (emphasis added).

*United States v. Craven*, 478 F.2d at 1333. *Accord United States v. Beason*, 690 F.2d

---

6. We note that in *Craven* the defendant was not present in his house at the time police seized unregistered firearms, $13,000 in U.S. currency, and various quantities of heroin. Thus, the facts in *Craven* differ from those in the instant case where Taylor owned and resided in the townhouse at 1141–A N. Noble, Chicago, Illinois, was present at the time of the search, and admitted owning selected items uncovered in the search (i.e. jewelry, $5,367 in U.S. currency, and various pieces of stereo and video equipment, many with serial numbers removed or defaced).

439, 443 (5th Cir.1982), *cert. denied,* 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983); *United States v. Alverson,* 666 F.2d 341, 345 (9th Cir.1982); *United States v. Smith,* 591 F.2d 1105, 1107 (5th Cir.1979); *United States v. Kalama,* 549 F.2d 594, 596 (9th Cir.), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977); *United States v. Birmley,* 529 F.2d 103, 107 (6th Cir.1976); *United States v. Daniels,* 527 F.2d 1147, 1149–50 (6th Cir.1975); *United States v. Hawke,* 505 F.2d 817, 823 (10th Cir.1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 658 (1975); *United States v. Black,* 472 F.2d 130, 131 (6th Cir.1972), *cert. denied sub nom. Leach v. United States,* 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973). Accordingly, proof that a person actually or constructively possessed an unregistered firearm, in violation of 26 U.S.C. § 5861(d), is sufficient proof that the person "knowingly possessed" the unregistered firearm in question. *See, e.g., United States v. Freed,* 401 U.S. at 612, 91 S.Ct. at 1119 (Brennan, J., concurring); *United States v. Gates,* 491 F.2d 720, 721 (7th Cir.1974). In this instance, the district court instructed the jury that in order "[t]o sustain the charge of unlawfully possessing an [unregistered] firearm," the Government had to prove that Taylor possessed an unregistered firearm, that he, in fact, knew was a firearm. *Accord United States v. Freed,* 401 U.S. at 607, 91 S.Ct. at 1117. In accord with the relevant case law, the district court further instructed the jury that:

> "The term 'possession' as it is used in the indictment includes actual or constructive possession. Possession by the defendant need not be exclusive. Constructive possession is when a person exercises dominion or control over an item."

Thus, in order for the jury to find Taylor guilty of violating 26 U.S.C. § 5861(d), the jury had to initially find that the Government's evidence established Taylor's actual or constructive possession of the unregistered machine gun and silencer.

A review of the record reveals that the jury was presented with more than ample evidence to find that Taylor constructively possessed the unregistered ma-chine gun and silencer in violation of 26 U.S.C. § 5861(d). It is undisputed that Taylor owned the townhouse at 1141–A N. Noble, Chicago, Illinois, and used it as his primary residence. Taylor exercised dominion and control over the townhouse, including the living room where police found the unregistered machine gun and silencer, the bedroom closet where police found an unregistered .30 caliber rifle, and the adjoining basement where police found nine unregistered pistols. Based upon this evidence, the jury could have reasonably inferred that the presence of other unregistered weapons throughout the townhouse provided Taylor with a reason to possess a machine gun and silencer. *See, e.g., United States v. Alverson,* 666 F.2d at 344–46; *United States v. LaGue,* 472 F.2d 151, 152 (9th Cir.1973); *United States v. Virciglio,* 441 F.2d 1295, 1296–98 (5th Cir.1971). Taylor also exercised dominion and control over those portions of the townhouse where police found 10.48 grams of cocaine and various articles of clothing, including fur coats and leather jackets, all with their labels removed. In addition to the presence of these items in the townhouse on the evening of January 12, 1982, Taylor admitted owning the jewelry and $5,367 in U.S. currency hidden behind a false ceiling in the basement, and various pieces of stereo and video equipment, many with serial numbers removed or defaced. In light of this admission, Taylor had a motive to possess the machine gun and silencer in order to protect the valuable items he had stored throughout the townhouse and adjoining basement. Finally, Taylor was present in the townhouse when police officers recovered the machine gun and silencer. Considering the fact that Taylor not only owned the townhouse wherein the unregistered machine gun and silencer were found, but also exercised dominion and control over it, and was present when police uncovered the illegal weapons, cocaine, jewelry, cash, clothing, and electronic equipment from the townhouse, it was reasonable for the jury to infer that Taylor constructively possessed

the unregistered machine gun and silencer.[7] As the court in *United States v. Alverson*, stated:

> " 'In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the premises ... in which the contraband is concealed.' ... [D]ominion and control over [defendant's] own residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession." (emphasis added).

666 F.2d at 345 (quoting *United States v. Smith*, 591 F.2d 1105, 1107 (5th Cir.1979)).

■ Additionally, Taylor's alibi that the machine gun and silencer belonged to the Simmonses was wholly dependent upon Taylor's claim that these mysterious friends from Texas occupied the townhouse from January 4, 1982, until January 12, 1982. The evidence presented at trial revealed that Taylor never identified these alleged friends from Texas at the time of the search and not until the time of trial, some nine months later, did Taylor refer to them as the Simmonses. Further, these mystery friends never testified at trial and Taylor admitted that he had not been in contact with them since January 4, 1982. Thus, in view of the evidence presented in the instant case, and based upon the totality of the circumstances, we hold that "substantial evidence and reasonable inferences therefrom" support the jury's determination that Taylor "possessed" the unregistered machine gun and silencer in violation of

26 U.S.C. § 5861(d). *Accord United States v. Alverson*, 666 F.2d at 345–46; *United States v. Smith*, 591 F.2d at 1106–07; *Craven*, 478 F.2d at 1333–34. Accordingly we will not disturb the jury's verdict.

## B. ADMISSION OF EVIDENCE

The appellant next contends that the district court erred by permitting the Government to introduce evidence of the cocaine, the nine pistols and one .30 caliber rifle, the stereo and video equipment without serial numbers, and the fur and leather jackets without labels, seized in the search of Taylor's townhouse on the evening of January 12, 1982. Appellant claims that this evidence, along with evidence of the cocaine discovered in Taylor's townhouse in June 1982, and Taylor's arrest in Florida for possession of cocaine in June 1982, are inadmissible under Fed.R.Evid. 404(b). According to the appellant, Fed.R.Evid. 404(b) prevents this evidence of "other crimes, wrongs, or acts" from being used to show Taylor's bad character or propensity for crime or as being relevant to the issue of possession of an unregistered machine gun and silencer.

A review of the record reveals that Taylor presented this same argument in a pretrial hearing following the impaneling of the jury but preceding the trial itself.[8] At this hearing, defense counsel objected when the Government informed the court that it was going to introduce evidence of the cocaine, U.S. currency, guns, electronic equip-

---

7. An inference that Taylor constructively possessed the unregistered machine gun and silencer in no way conflicts with the reasoning in *Craven*, where the defendant was not present in his house at the time that the police uncovered the illegal weapons. Upholding the defendant's conviction, the court in *Craven* stated, "[a]lthough possession of the residence is insufficient to establish possession of all the contents of the house, the government's evidence went much further." 478 F.2d at 1333. In the instant case, the Government established that Taylor not only owned the townhouse and exercised dominion and control over it, but that he used the townhouse as his primary residence and was present at the time that police discovered the unregistered machine gun and silencer. These facts, when combined with the

Government's evidence that additional unregistered weapons, cocaine, $5,367 in U.S. currency, jewelry, fur coats and leather jackets with their labels removed, and numerous pieces of stereo and video equipment, many with serial numbers removed or defaced, were also present in the townhouse on the evening of January 12, 1982, are more than sufficient to infer that Taylor constructively possessed the unregistered machine gun and silencer.

8. On July 18, 1983, this court granted the Government's Motion to Supplement the Record on Appeal. Pursuant to this court's order, we received the transcript of the pre-trial hearing involving the Government, defense counsel, and the presiding trial judge.

ment, and clothing seized during the search of Taylor's townhouse on January 12, 1982, as a motive for Taylor's possession of the machine gun and silencer. The court provided defense counsel with an opportunity to respond, and in the course of his response, defense counsel informed the court of Taylor's alibi defense, that he had no knowledge of the presence of the machine gun and silencer in his townhouse on the evening of January 12, 1982. The trial judge ruled in pertinent part:

"I am going to allow [the evidence] in on the basis that there is an issue before this jury, as I understand. It is the defendant's assertion that he did not know—that is the guns I am talking about—that the machine gun and handguns were in his apartment. And, I think on that basis, it is probative and relevant to the jury's determination as to whether it is more likely than not that he knew that these things were there. In addition to that, I find that the machine gun and its possession—if the jury believes that Mr. Taylor had that, or was motivated, at least in part, by the other things that were in there, particularly the cash and the cocaine, and perhaps to a lesser extent the video equipment that has been described here—is probative.

I also find that because they were found all in one search warrant—the machine gun was recovered at the same time as these other things were recovered—there is some connection by virtue of that with the machine gun. And, while I quite agree that there is some prejudice that is attached, *I think the probative value outweighs the prejudice.*" (emphasis added).

Fed.R.Evid. 404(b) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*" (emphasis added).

Pursuant to Fed.R.Evid. 404(b), in order for evidence of "other crimes, wrongs, or acts" to be admitted on the issue of knowledge or motive, the probative value must outweigh the prejudicial effect in accord with Fed.R. Evid. 403. *See United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); Advisory Committee Note, Fed. R.Evid. 404(b). As this court stated in *United States v. Verkuilen,* 690 F.2d 648 (7th Cir.1982) ("*Verkuilen*"), "[e]vidence of other crimes, wrongs, or acts is admissible to prove ... knowledge or motive ... if such acts have a 'substantial relevance' to an issue other than general criminal character." 690 F.2d at 656 (citing *United States v. McPartlin,* 595 F.2d 1321, 1343 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)). In *Verkuilen* we approved the district court's decision to admit "evidence of other acts for which appellant was not charged ... to establish willfulness and 'to show a single scheme or common pattern of illegal conduct.'" 690 F.2d at 656. We added that the district court must determine "whether the danger of undue prejudice outweighs the probative value of the evidence." *Id.* Accordingly, "the balancing of probative value and prejudice is committed to the sound discretion of the trial judge and we are obligated to give great deference to the evidentiary ruling of the trial court." *United States v. Baskes,* 649 F.2d 471, 481 (7th Cir.1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1706, 68 L.Ed.2d 201 (1981). *See also United States v. Brown,* 688 F.2d 1112, 1115 (7th Cir.1982); *United States v. Watson,* 623 F.2d 1198, 1203 (7th Cir.1980); *United States v. O'Brien,* 618 F.2d 1234, 1238–39 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980).

■ The record reveals that, in this instance, the trial judge weighed the prejudicial effect of this evidence against the probative value and, in light of Taylor's alibi defense, allowed the evidence to be introduced to show Taylor's knowledge of and motive for possessing the machine gun and silencer. Furthermore, the trial judge gave a special limiting instruction directing the

jury that this evidence was to be considered "only on the question of motive and knowledge and intent and for no other purposes." In his alibi defense, Taylor maintained that he had no knowledge of the presence of the machine gun and silencer in his townhouse on the evening of January 12, 1982. In such a situation, evidence of cocaine in a false-bottom deodorant can, jewelry and $5,367 in U.S. currency behind a false ceiling, stereo and video equipment without serial numbers, and fur and leather jackets without labels, certainly provided Taylor with a motive to possess a weapon. *See, e.g., United States v. Miroff,* 606 F.2d 777, 780–81 (7th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). In fact, the presence of such a variety of valuable items, including 10.48 grams of illegal cocaine, nine unregistered pistols, and one unregistered .30 caliber rifle, provided a motive for possessing even a dangerous weapon such as a machine gun and silencer. In addition, the presence of nine pistols and a .30 caliber rifle in Taylor's townhouse on the evening of January 12, 1982, was highly relevant to the issue of Taylor's knowledge that a machine gun and silencer were also present in the townhouse on that same evening. Accordingly, we hold that the district court did not abuse its discretion in determining that the probative value of this evidence, in light of Taylor's alibi defense, outweighed any possible prejudicial effect the evidence may have had upon the jury, and therefore, was admissible under Fed.R.Evid. 404(b) as evidence of Taylor's knowledge and motive. *Accord Verkuilen,* 690 F.2d at 656.

■ Unlike the evidence seized during the search of Taylor's townhouse on the evening of January 12, 1982, evidence of the cocaine discovered in Taylor's townhouse in June 1982, and evidence of Taylor's arrest in Florida for possession of cocaine in June 1982, was not introduced by the Government. Instead, the Government elicited this testimony from Taylor on cross-examination. Taylor testified on direct examination that there was no cocaine in his townhouse. On cross-examination, the prosecutor asked Taylor if he was "familiar with cocaine in any context at all," and Taylor responded "no." At that time, the prosecutor approached the bench and informed the judge of an apparent cocaine arrest in Florida in June 1982, and the discovery of "2 ounces or 3 ounces of cocaine" in Taylor's townhouse in June 1982. The prosecutor further informed the judge that he was going to use this evidence to impeach Taylor's answer with regard to his "familiarity with cocaine." The judge permitted the prosecutor to proceed with the question for purposes of impeachment, but instructed the prosecutor that he was bound by any answer given. Taylor admitted to being indicted in Florida on a cocaine charge and having "heard" that a quantity of cocaine was found in his townhouse in June 1982, though he was not present at the time. Following this testimony, the trial judge again reminded the jury of his limiting instruction that the cocaine seized in the search of Taylor's townhouse on the evening of January 12, 1982, was "offered only on the question of knowledge, intent and motive," and further instructed the jury that "this past [cocaine] testimony may be considered by you only insofar as it may affect the credibility of the witness and not for any other purpose."

The appellant relies upon the holding in *United States v. Shelton,* 628 F.2d 54 (D.C. Cir.1980) (*"Shelton"*), to claim that the Government cannot elicit testimony concerning "other crimes, wrongs, or acts" behind the guise of cross-examination. In *Shelton,* the prosecutor cross-examined a defense witness and established that he had been in the area of the alleged crime, was unemployed, and had $2,600 in his possession, $1,300 of which was in a suitcase in the rear of his automobile. In addition, the prosecutor cross-examined the defendant and established that he too was unemployed. The United States Court of Appeals for the District of Columbia ruled that the prosecutor's portrayal of the defendant "as an undesirable, a member of the drug underworld [was] . . . impermissible," *Shelton,* 628 F.2d at 58, and therefore, the cross-examination was improper.

The facts in the instant case are markedly distinguishable from those in *Shelton.* At trial, the prosecutor questioned Taylor concerning the discovery of cocaine in his townhouse in June 1982, to impeach Taylor's denial of any "familiarity with cocaine," not to "portray the defendant as a criminal type." While properly cross-examining Taylor concerning the presence of cocaine in his townhouse, the prosecutor informed the judge of his intention to impeach Taylor only on the issue of Taylor's "familiarity with cocaine." The trial judge acted in accord with Fed.R.Evid. 608(b), which allows for cross-examination of "[s]pecific instances of the conduct of a witness," but prevents proof of those instances with extrinsic evidence.[9] The judge determined that evidence of the cocaine in Taylor's townhouse and a cocaine arrest in June 1982, was probative of Taylor's truthfulness as to his present familiarity with cocaine and permitted the prosecutor's line of cross-examination but properly held the Government bound by Taylor's answer. *Accord United States v. Ling,* 581 F.2d 1118, 1120–21 (4th Cir.1978). Moreover, immediately following the Government's questions concerning Taylor's familiarity with cocaine, the judge gave a limiting instruction and directed the jury to consider this evidence only on the issue of Taylor's credibility as a witness. Accordingly, we hold that the district court did not abuse its discretion by determining that the government's cross-examination was probative of Taylor's truthfulness and by holding the government bound to Taylor's answer to questions concerning his "familiarity with cocaine."

## C. CROSS–EXAMINATION

The appellant next contends that the Government improperly attempted to impeach Taylor concerning the $5,367 in U.S.

currency found behind the false ceiling, and whether the Simmonses were the alleged friends from Texas. Appellant claims that the form of impeachment was improper, and in the alternative, if the form was proper, the substance of the impeachment was improper because the matters were collateral in nature.

At trial, during the Government's case-in-chief, officers Matthews and Siwek each testified that at the time of the search on January 12, 1982, Taylor acknowledged owning a quantity of money, "over $5,000," that he was going to use for a trip. Officers Siwek and Malone each testified that Taylor never identified the alleged "friends from Texas" at the time of the search. Taylor then testified, on direct examination, that the money found behind the false ceiling was collected from his sale of items at flea markets and was to be used for a business trip to Hawaii. Taylor also testified that he had allowed the Simmonses to stay in his townhouse from January 4, 1982, to January 12, 1982. The Government's subsequent cross-examination of Taylor focused upon the inconsistencies between what Taylor had told police officers on the evening of January 12, 1982, concerning the money and the mystery friends from Texas, and what he was now claiming at trial.

To support his position that the Government's cross-examination on these issues was improper, appellant erroneously relies upon this court's language in *United States v. Lambert,* 463 F.2d 552 (7th Cir. 1972) ("*Lambert*"). In *Lambert,* the defendant, *on cross-examination,* denied purchasing items from an employee of a freight company. The Government, in rebuttal, introduced evidence of such purchases. This court stated that "a witness may not be impeached by contradictions as to

9. Fed.R.Evid. § 608(b) provides:
"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

collateral or irrelevant matters *elicited on cross-examination.*" (emphasis added) 463 F.2d at 557. Appellant erroneously asserts that *Lambert* does not allow a witness to be impeached on "collateral matters on cross-examination." *Lambert* stands for no such proposition, rather it states the general rule that a witness "may not be impeached by contradiction as to collateral ... matters *elicited* on cross-examination." (emphasis added) 463 F.2d at 557. In this instance the matters concerning the money found behind the false ceiling and the identity of the Simmonses were matters elicited by the defendant's counsel on direct examination, and thus subject to cross-examination by the Government. The Government's cross-examination of Taylor falls within this court's proviso in *United States v. Cavale,* 688 F.2d 1098 (7th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 513 (1982), that "[w]hen a party opens up a subject ... he cannot complain on appeal if the opposing party introduces evidence on the same subject." 688 F.2d at 1112 (quoting *United States v. Bolin,* 514 F.2d 554, 558 (7th Cir.1975)). *See also United States v. Carter,* 720 F.2d at 948; *United States v. Lynch,* 699 F.2d 839, 844 (7th Cir.1982).

The record reveals that Taylor's counsel questioned Taylor concerning the money found behind the false ceiling and the identity of the mystery friends from Texas on direct examination, thereby "opening the door" for the Government to impeach Taylor's testimony on cross-examination. The Government proceeded to cross-examine Taylor concerning his statements to police on the evening of January 12, 1982, that the money found in the ceiling was for a business trip to Hawaii and that the items in the basement were left by "a friend of his from Texas," whom he had not seen or heard from since January 4, 1982. Accordingly, the Government's cross-examination of Taylor was proper.

### III

We affirm the judgment of conviction.