114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Douglas TURNBOUGH, Defendant-Appellant/Cross-Appellee.
 Nos. 96-2531, 96-2677.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 10, 1996.*
Decided May 14, 1997.
 
 Before CUMMINGS, WOOD, JR. and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 The defendant, Douglas Turnbough ("Turnbough"), appeals from his conviction for possession of marijuana with intent to distribute within 1,000 feet of a school in violation of 21 U.S.C. § 860 and for possession of a firearm lacking a serial number in violation of 26 U.S.C. § 5861(i). The government cross-appeals from the district court's refusal to increase Turnbough's offense level based upon his possession of a dangerous weapon during a drug trafficking offense. We affirm Turnbough's conviction on all counts, but vacate his sentence and remand for resentencing in accordance with U.S. Sentencing Guideline § 2D1.1.
 
 I. Background
 
 2
 Law enforcement authorities intercepted six 55-gallon drums containing marijuana and executed a controlled delivery of the marijuana to D & D Trailer Repair in Granite City, Illinois. The next day, a co-defendant picked up the drums and drove them to a residence in Granite City where Turnbough allegedly resided with his girlfriend, the owner of the property. Police arrested Turnbough as he and the co-defendant attempted to unload the drums and place them in a detached garage. A subsequent search of the residence turned up more marijuana and indicia of narcotics trafficking as well as various firearms. All of the firearms that the police recovered were sportsman-type guns, except for a handmade .25 caliber handgun that had been hanging on the wall in the master bedroom. Several days after the police arrested Turnbough, they measured the distance between the property where the attempted delivery had taken place and a neighborhood school. Two different measurements indicated that the property was within 1,000 feet of the school. Based on this information, Turnbough was indicted for and convicted of possession of marijuana with intent to distribute within a "school zone" and possession of a firearm not bearing a proper serial number, among other counts.
 
 
 3
 The district court initially sentenced Turnbough to 140 months imprisonment, a $10,000 fine, eight years of supervised release and a special assessment. However, we remanded the case in light of Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501 (1995) because Turnbough had been convicted of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). The district court vacated the conviction on the § 924(c) count and resentenced Turnbough because the initial sentence rested in part on Turnbough's § 924(c) conviction. At resentencing, the district court sentenced Turnbough to 80 months imprisonment, an $8,000 fine, five years of supervised release and a special assessment.
 
 II. Turnbough's Appeal
 
 4
 A. Constitutionality of the Schoolyard Statute
 
 
 5
 First, Turnbough contends that we must overturn his conviction for possession of marijuana with the intent to distribute it within 1,000 feet of a school because the "Schoolyard Statute," codified as 21 U.S.C. § 860(a), which prohibits this type of conduct is unconstitutional. He argues that the Schoolyard Statute exceeds congressional authority under the Commerce Clause because no link exists between narcotics and interstate commerce and asks us to extend the Supreme Court's reasoning in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624 (1995) to the Schoolyard Statute. We rejected an identical challenge in United States v. McKinney, 98 F.3d 974, 976-80 (7th Cir.1996), cert. denied 520 U.S. 1110, 117 S.Ct. 1119 (1997). Accordingly, we affirm his conviction on the same basis. See also United States v. Rogers, 89 F.3d 1326, 1338 (7th Cir.), cert. denied --- U.S. ----, 117 S.Ct. 495 (1996).
 
 B. Sufficiency of the evidence
 
 6
 Next, Turnbough contends that the government presented insufficient evidence to support the jury's verdict finding him guilty of possessing a firearm lacking a serial number in violation of 26 U.S.C. § 5861(i). In challenging the sufficiency of the evidence, Turnbough faces a heavy burden. We will affirm a conviction unless the defendant shows that after considering the evidence in the light most favorable to the government, no rational trier of fact could find that the defendant committed the crime beyond a reasonable doubt. United States v. Tylkowski, 9 F.3d 1255, 1259 (7th Cir.1993). Section 5861 is part of the National Firearms Act. To establish a violation of § 5861(i), the government must demonstrate that the defendant received or possessed a firearm within the meaning of the Act; that the defendant was aware of the characteristics of the weapon which made it a firearm within the statutory definition, United States v. Staples, 511 U.S. 600, 619 (1994); and that the firearm lacked a serial number. United States v. Crawford, 906 F.2d 1531, 1534 (11th Cir.1990).
 
 
 7
 Turnbough first argues that the government's evidence failed to establish his possession of the handmade .25 caliber handgun. He maintains that the government presented no evidence that he "received, knew about, possessed or had any control over" the handgun. (Def.'s Br. at 16). While this lack of evidence may demonstrate that the government failed to establish Turnbough's actual possession of the gun, possession under § 5861 may be either actual or constructive. United States v. Taylor, 728 F.2d 864, 868 (7th Cir.1984). Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others. Id. (citations omitted). The government may establish constructive possession by demonstrating that the defendant exercised ownership, dominion or control over the premises in which the contraband is concealed. Id. at 870; see also United States v. Perez, 897 F.2d 751, 754 (5th Cir.1990) (constructive possession established by demonstrating that the defendant had dominion and control over the vehicle).
 
 
 8
 Here, the government presented evidence that the police recovered the handgun from the master bedroom of the residence located on the property where Turnbough and his co-defendants were arrested. The government also presented evidence from which a jury reasonably could conclude that Turnbough exercised dominion and control over the residence. Testimony revealed that Turnbough lived at the residence with his girlfriend, the owner of the property. Turnbough also possessed a key to the cellar on the property at the time of his arrest and admitted that he owned some of the currency in the cellar. This evidence, when taken together, was sufficient for a reasonable jury to conclude that Turnbough exercised dominion and control over the residence and, thus, possessed the handgun. Turnbough maintains that this evidence was insufficient because the evidence established that Turnbough's girlfriend and her daughter also lived at the residence but failed to establish that Turnbough exercised dominion and control over the handgun to the exclusion of his girlfriend and her daughter. However, viewing the evidence in the light most favorable to the government, at the least, a reasonable jury could conclude that all three parties exercised dominion and control over the gun. Possession may be either sole or joint. Crawford, 906 F.2d at 1535. Therefore, the government presented sufficient evidence of possession.
 
 
 9
 Turnbough also apparently maintains that the government failed to establish that the gun was a firearm rather than an "antique firearm." Antique firearms are exempted from registration under the Act. 26 U.S.C. § 5845(a); United States v. Tribunella, 749 F.2d 104 (2d Cir.1984). The Act defines "antique firearm" as any firearm manufactured before or in 1898 which is not designed or redesigned for using rim fire or conventional center fire ignition or any firearm manufactured before or in 1898 using fixed ammunition but for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade. 26 U.S.C. § 5845(g). Turnbough rests his argument on the government's failure to introduce any evidence suggesting when the handgun was manufactured.[1] However, federal agents examining the handgun testified that the gun was a .25 caliber handgun. One of the agents also testified that he tested the gun and that it fired when he loaded it with commercially available .25 caliber ammunition. Thus, even if the gun was manufactured in or before 1898, it would not be exempted from registration. See Tribunella, 749 F.2d at 108-111 (shotgun manufactured prior to 1898 was not exempted from registration because it was capable of firing ammunition that was currently available in the ordinary channels of commerce). In light of this testimony, evidence establishing when the handgun was manufactured was irrelevant, and even without such evidence, a rational trier of fact could conclude that the handgun was a firearm within the meaning of the Act.
 
 
 10
 On appeal, Turnbough now argues that the government failed to establish that he knew of the characteristics of the handgun that made it a firearm under the Act. However, Turnbough failed to raise this argument below. Thus, he has waived this argument. Johnson v. Duneland School Corp., 92 F.3d 554, 557 (7th Cir.1996). Finally, because § 5861 is a regulatory measure, the government need not prove that Turnbough knew that the handgun lacked a serial number. United States v. Freed, 401 U.S. 601, 609 (1971). Thus, to the extent that Turnbough challenges the sufficiency of the government's evidence that Turnbough knew that the handgun lacked a serial number, we reject his argument. Based on all of the evidence discussed above, a rational jury could reasonably conclude that Turnbough possessed the handgun and that it was a firearm as defined in the statute. Moreover, testimony indicated that the handgun lacked a serial number. Accordingly, we must sustain the verdict against Turnbough.
 
 III. Government's Cross Appeal
 
 11
 The government appeals from the district court's refusal to apply a two-level enhancement under U.S. Sentencing Guideline § 2D1.1(b) based on Turnbough's possession of a dangerous weapon--the firearms in the residence. Section 2D1.1 provides that for certain drug trafficking offenses, the district court should increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The application notes explain that the court should apply this adjustment if "the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. at comment. (n. 3). The district court denied the enhancement, apparently reasoning that Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501 (1995), prevented the court from applying the guideline to Turnbough because Bailey altered the definition of possession in relation to a drug trafficking offense.
 
 
 12
 The district court's reasoning misinterprets the Supreme Court's holding in Bailey. As we have explained, Bailey 's discussion of what constitutes "use" under § 924(c) has no effect on what constitutes "possession" under § 2D1.1(b)(1). United States v. Carmack, 100 F.3d 1271, 1279 (7th Cir 1996). Indeed, in Bailey, the Court specifically distinguished between the two requirements, stating:
 
 
 13
 While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs.... § 2D1.1(b)(1) provides an enhancement for a person convicted of certain drug-trafficking offenses if a firearm was possessed during the offense.
 
 
 14
 Bailey, 116 S.Ct. at 509. Thus, § 2D1.1(b)(1) clearly does not require the evidence of active employment that Bailey mandates for a conviction under § 924(c), nor does it require evidence of the defendant's actual use or intent to use the firearm. Carmack, 100 F.3d at 1280.
 
 
 15
 Despite this language in Bailey, the district court apparently believed that post-Bailey, possession under § 2D1.1(b)(1) required active use. Accordingly, while the district court acknowledged that the government had presented evidence that Turnbough possessed a firearm, the district court found that the government presented no evidence that Turnbough possessed a firearm during a drug trafficking offense. At sentencing, the court stated:
 
 
 16
 There were no guns on him. There was no evidence that he during the drug transaction in any way handled the guns or used the guns for anything. There's no evidence of that. And without evidence of that, the adjustment which is referred to in [§ 2D1.1(b)(1) ] is simply not justified.
 
 
 17
 (Tr. of June 6, 1996 Sentencing Hr'g at 9).
 
 
 18
 In Carmack we held that even post-Bailey, such a determination created too high a threshold for the application of the guideline. 100 F.3d at 1280. Instead, we held that the proximity of the firearm to the drugs is an appropriate test for determining whether a defendant possessed a firearm for the purposes of § 2D1.1(b)(1). Id. As stated above, the district court did not consider the proximity of the firearms to any of the marijuana that the police recovered. Thus, we vacate Turnbough's sentence and remand for resentencing in accordance with this order and our decision in Carmack.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Turnbough mistakenly argues that the Act exempts from registration firearms manufactured before 1934. Turnbough bases this reasoning on testimony by one of the federal agents that the Act only requires serial numbers on firearms manufactured after 1934. However, the court rather than the fact finder determines matters of law, and in making these determinations, we are not bound to accept a witness's testimony as to what the law requires. Moreover, Turnbough mischaracterizes the federal agent's testimony. In fact, on direct examination, the agent testified that the Act applied to weapons manufactured after 1900. On cross-examination he stated that he did not recall what year the statute specified but that he thought it was 1934